EDWARD BERNARD BURGESS, JR.,

        Plaintiff,

  v.

Case No. 19-cv-1901-pp

MILWAUKEE POLICE DEPARTMENT,
UNITED STATES MARSHALS,
CRIMINAL INVESTIGATION BUREAU,
and FEDERAL BUREAU OF INVESTIGATION,

        Defendants.

**ORDER GRANTING MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), WAIVING INITIAL PARTIAL FILING FEE, DENYING MOTION TO TEMPORARILY CLOSE CLASE (DKT. NO. 15), DISMISSING DEFENDANTS AND ORDERING PLAINTIFF TO FILE AMENDED COMPLAINT**

      On December 30, 2019, the plaintiff was in custody in the Milwaukee County Jail. Dkt. No. 1 at 5. He filed this civil rights lawsuit, alleging that on April 19, 2019, a Milwaukee police officer conducted surveillance on the house his sister was renting, that the officer and others lied about what they saw during that surveillance, that eventually officers searched the house without a warrant and that they got a warrant signed after the search. Id. at 2-3. He also filed a motion asking the court to allow him to proceed without prepaying the filing fee. Dkt. No. 2.

      There has been a lot of back and forth in the case about whether the plaintiff is able to pay the initial partial filing fee, and whether he ought to pay the fee; most recently, he asked the court to temporarily close the case until he

could come up with the money to pay the fee. Dkt. No. 15. The court is going to deny that motion, waive the initial partial filing fee, dismiss some of the defendants and require the plaintiff to file an amended complaint by a date certain.

I. **Procedural History**

On December 31, 2019, Magistrate Judge Duffin, to whom the case was assigned at the time, ordered the defendant to pay a $25.83 initial partial filing fee, based on the information in the trust account statement the plaintiff had filed for the six months prior to the filing of his complaint. Dkt. No. 5. Judge Duffin required the plaintiff to pay the initial partial filing fee by January 21, 2020. Id. On that date, the court received a request from the plaintiff, saying that he didn't have any money in his trust account and asking either for a waiver of the initial partial filing fee or an extension of time to pay it. Dkt. No. 6. Judge Duffin granted the request for an extension and gave the plaintiff a new deadline of February 21, 2020 to pay the $25.83 filing fee. Dkt. No. 8.

On January 27, 2020, the court received a letter from the office of the Sheriff of Milwaukee County, notifying the court that the plaintiff had only $0.03 in his trust account. Dkt. No. 9. On February 20, 2020, the court received another motion from the plaintiff, again indicating that he didn't have the money to pay the initial partial filing fee and again asking for a waiver. Dkt. No. 10. On March 17, 2020, Judge Duffin issued an order denying the request for waiver of the filing fee. Dkt. No. 11. While Judge Duffin acknowledged that the sheriff's department said the plaintiff didn't have enough money at that

2

time to pay the fee, he noted that the trust account statement showed that in the six months before the plaintiff filed the federal lawsuit, he'd received over $700 in deposits, most of which he'd spent on phone calls. Id. at 2-3. Judge Duffin concluded that the reason the plaintiff didn't have the funds to pay the $25.83 was because he'd spent almost everything he got in the six months before he filed the suit, and so he denied the request for a waiver. Id. at 3. Judge Duffin gave the plaintiff a deadline of April 17, 2020 to pay the $25.83. Id.

Not surprisingly, on April 17, 2020, the court received yet another letter from the plaintiff. Dkt. No. 12. He was still in the Milwaukee County Jail. Dkt. No. 12-1. This letter said that the plaintiff was "amending" his complaint to add defendants' names and reiterated that he "again" did not have the partial filing fee. Id. He again asked for either waiver or an extension. Id. The same day, the court received from the plaintiff a motion for leave to amend his complaint. Dkt. No. 13. Judge Duffin denied this motion. Dkt. No. 14. Judge Duffin noted that if the plaintiff did not have the money in his trust account, he could pay the initial partial filing fee out of his release account. Id. at 2. He also told the plaintiff that the plaintiff could voluntarily dismiss the lawsuit and refile it later (assuming the statute of limitations had not expired). Id. Judge Duffin set a deadline of July 1, 2020 for the plaintiff to pay the initial partial filing fee. Id.

Judge Duffin also denied the plaintiff's motion to amend the complaint. Id. The plaintiff hadn't signed the motion, and he wasn't really asking to amend

3

the complaint—he was asking to substitute parties. Id. Judge Duffin told the plaintiff how to properly do that. Id.

On July 16, 2020—six and a half months after the plaintiff filed this complaint—the court received his request to "close but reopen [the case] on a later date when [he is] able to pay the filing fee, which does not dismiss but only temporary close." Dkt. No. 15.

## II. Factual Background

To understand why the court is dismissing the plaintiff's case, one must know some background. On February 26, 2019, the federal grand jury in the Eastern District of Wisconsin returned a two-count indictment charging the plaintiff with one count of arson in violation of 18 U.S.C. §844(i) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2). United States v. Burgess, Case No. 19-cr-42-JPS. (E.D. Wis.), Dkt. No. 1. Both offenses took place on December 7, 2018. Id.

A little over four months later, on April 23, 2019, the Milwaukee County District Attorney filed a complaint charging the plaintiff with committing armed robbery in violation of Wis. Stat. §943.32(2). State v. Burgess, Case No. 2019CF001750 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov/. At his initial appearance in Milwaukee County Circuit Court, the plaintiff was released to Justice Point for supervision. Id.

A week later, on May 1, 2019, federal Magistrate Judge Nancy Joseph signed a complaint in the federal case, United States v. Burgess, 19-cr-42 JPS (Dkt. No. 5). The complaint alleged that on April 15, 2019 at around 6:15 p.m.,

4

Case 2:19-cv-01901-PP   Filed 07/23/20   Page 4 of 19   Document 16

the plaintiff robbed the Metro PCS store on North Teutonia. Id. at 2-3. The plaintiff had an active warrant against him as a result of the arson indictment. Id. at 3. Three days later, on April 18, law enforcement identified someone with the initials "T.H." as being associated with the plaintiff. Id. "T.H." had a black, 2006 Chrysler Town and Country van; law enforcement conducting surveillance found a vehicle matching that description (with no license plates) parked in the driveway of T.H.'s residence in Milwaukee. Id. at 4. The next day—April 19, 2019—law enforcement officers identified one of the plaintiff's family members as living at 3825 West Marion Street in Milwaukee. Id. Officer surveilled the residence and saw the plaintiff there. Id. They arrested him based on the active arson warrant; "T.H." also was in the residence, and T.H.'s black Chrysler van was parted "near the garage." Id. Officers got a state search warrant for the residence and the van. Id.

In the residence, officers found a loaded 7.65 caliber Beretta semi-automatic handgun in a bedroom. Id. In the van, officers found clothing and shoes consistent with those worn by the person who robbed the Metro PCS store on April 15. Id. On April 20, 2020, the plaintiff was interviewed at the Milwaukee Police Department and read his rights. Id. The plaintiff waived his rights, and in a recorded interview, admitted he had robbed the Metro PCS store on April 15, 2019. Id. On April 22, 2019, the Milwaukee Police presented a line-up to the victim of the Metro PCS robbery. Id. at 5. The victim identified the plaintiff as the person who robbed the store and identified a photo of the

5

gun seized from the house on Marion as the gun displayed during the robbery. Id.

On May 2, 2019, the Milwaukee County Circuit Court dismissed the state armed robbery charge because the plaintiff had been indicted in federal court. State v. Burgess, 2019CF001750 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov.

On May 3, 2020, Judge Joseph ordered the plaintiff detained pending trial in the federal case. United States v. Burgess, 19-cr-42-JPS at Dkt. Nos. 5, 6. On May 14, 2019, the federal grand jury returned a superseding indictment charging the plaintiff with the original arson and felon-in-possession charges and the new charges of Hobbs Act robbery of the Metro PCS store and using, carrying and brandishing a firearm during and in relation to that robbery. Id. at Dkt. No. 13. The case remains pending.

### III. The Allegations in the Complaint

The complaint alleges that on April 19, 2019—four days after the Metro PCS robbery and the day officers arrested the plaintiff and searched the house on Marion and T.H.'s van—the Milwaukee police conducted surveillance at 3825 W. Marion Street, which the plaintiff says his sister was renting at the time. Dkt. No. 1 at 2. The plaintiff says that MPD officer Richard Litwin (not named as a defendant) "lied/claimed on audio surveillance that Titierra Howard came out of the house." Id. The plaintiff says that an officer named Michael Lopez (not named as a defendant) "challenged" what Litwin claimed to

6

Case 2:19-cv-01901-PP    Filed 07/23/20    Page 6 of 19    Document 16

have seen "on audio," because Lopez did not see Titierra; the plaintiff says that there is a conflict between Litwin and Lopez "on audio." Id.

The plaintiff further alleges that Lopez lied by claiming to have seen the plaintiff coming out of the house five minutes later, "taking out three large t[]rash bag's at 10:45 a.m. then re-enter the home." Id. at 2-3. He says that despite four officers (Jeffrey Jeff Cline, Litwin, Lopez and Brit Kohnert, none of whom were named as defendants) as well as an unknown District Attorney's Office investigator conducting surveillance on the house on Marion, no one took photos or made a body cam video of the plaintiff and Titierra Howard. Id. The plaintiff says that he and Titierra Howard know "100 percent" that they never exited the house. Id.

The plaintiff goes on to say that the Milwaukee officers called for backup, and at about 11:20 a.m. the door was knocked in without anyone knocking or announcing themselves. Id. He says the house was searched fully as soon as they came in, at 11:20 a.m. Id. The plaintiff asserts, however, that the search warrant was signed at 12:30 p.m. and that the affidavit in support was signed at 1:30 p.m.; he says that the affidavit was supposed to have been signed before the warrant and alleges that the house was searched before either document was signed. Id.

The plaintiff alleges that his Fourth Amendment rights were violated. Id. For relief, he says he wants the courts to know that the police did not "go by police procedure" and that the house was searched before the warrant was signed. Id. at 4. He wants evidence suppressed, he wants damages of

$5,000,000 and he wants the officers suspended (not fired) and to stop lying and admit that they messed up. Id.

**IV. Analysis**

    A.    The Filing Fee

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed the complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow a prisoner plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

The court has discussed the history of the defendant's representations that he doesn't have the money to pay the $25.83 initial partial filing fee, and Judge Duffin's orders in response. The court has looked at the plaintiff's trust account statement for mid-June through mid-December 2019. Dkt. No. 3. He got a $50 deposit on July 1, a $40 deposit on July 7, a $30 deposit on July 19, a $55 deposit on August 30, a $40 deposit on September 8. Id. at 1. He didn't get another significant deposit until October 8, when he received another $40. Id. He got $100 two days later, on August 10. Id. A month went by, and he got another $30 on November 1. Id. at 2. He received another $100 on November 3. Id. He received $40 November 15. Id. And he received a total of $120 on November 25-26. Id. He also received $40 on November 30. Id. at 5. He received $50 on December 13, and $40 on December 14. Id. He filed this

8

Case 2:19-cv-01901-PP   Filed 07/23/20   Page 8 of 19   Document 16

lawsuit December 30, 2019, Dkt. No. 1, and received Judge Duffin's order requiring him to pay the initial partial filing fee on December 31, 2019, dkt. no. 5.

The court understands Judge Duffin's reluctance to waive the filing fee. Over that six months, all but four of the numerous debits from the plaintiff's account were for phone calls. In the last full month reflected on the trust account statement, he ran through $250 in phone charges. And it isn't clear why the plaintiff was receiving regular deposits at least once a month, often more, from June through December, and yet in every request for an extension or waiver of the fee, he says that since December, he's had no money.

But at this point, it has been six months and the plaintiff has not been able to come up with $25.83. A court may not dismiss a prisoner's lawsuit simply because he doesn't have the money to pay the initial partial filing fee. See 28 U.S.C. §1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.") The court concludes, based on the information the plaintiff has provided over the six months since he filed the lawsuit, that he does not have the assets or the means to pay the $25.83. The court will waive the initial partial filing fee. It will require the plaintiff to pay the $350 balance of the filing fee over time in the manner explained at the end of this order.

B. <u>Screening the Complaint</u>

1. *Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

2. *Analysis*

In this federal civil rights lawsuit, the plaintiff alleges that the defendants violated the Fourth Amendment when officers lied about what they saw when they surveilled his sister's house and when they allegedly searched the house and Howard's van without a warrant. Those events are part of the criminal case that is pending in front of another judge of this court. The plaintiff was charged criminally (in state court) on April 23, 2019. He was charged federally on May 1, 2019. He filed this civil rights lawsuit on December 30, 2019, while this federal lawsuit was pending. The federal lawsuit *still* is pending.

Part of the plaintiff's claim is that officers fabricated evidence against him—they lied about what they saw when surveilling the house on Marion Street. "His claim requires him to show that the criminal proceedings against him—and consequent deprivations of his liberty—were caused by [the officers'] malfeasance in fabricating evidence." McDonough v. Smith, ___ U.S. ___, 139 S.

11

Ct. 2149, 2156 (2019). A plaintiff cannot bring a fabricated evidence claim under §1983 "prior to favorable termination of his prosecution." Id. at 2157. The reason for this rule is to avoid "parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." Id.

As for the plaintiff's claims that both the search of his sister's residence and T.H.'s van and the plaintiff's own seizure violated the Fourth Amendment, it appears at first glance that those claims are barred by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87.

The question the court must answer is whether, if it found in favor of the plaintiff on his claims about the searches and his seizure, those findings would "necessarily imply the invalidity of [the plaintiff's] conviction or sentence." "[M]isconduct by the police does not (at least, need not) imply the invalidity of

12

any particular conviction." Moore v. Burge, 771 F.3d 444, 446 (7th Cir. 2014). For example, in Rollins v. Willett, 770 F.3d 575 (7th Cir. 2014), a defendant who pled guilty to driving with a suspended or revoked license sued under §1983, alleging that the police unlawfully seized him in violation of the Fourth Amendment when they ordered him back into his car. Id. at 576. The Seventh Circuit concluded that even if the defendant was correct that the police violated the Constitution by ordering him back into his car, that would not invalidate his conviction, because he had pled guilty to driving with a suspended or revoked license. Id. In other words, the defendant's conviction was not based on any evidence obtained as a result of an unlawful seizure. Id. at 577.

The plaintiff's circumstances in this regard are unusual. On October 17, 2019, his then-lawyer, Tony Cotton, notified Judge Stadtmueller that the plaintiff had decided to plead guilty to the Metro PCS robbery charge and the related gun charge. United States v. Burgess, 19-cr-42-JPS at Dkt. No. 77. The government provided a factual basis for the plea. Dkt. No. 78. That statement indicated that if the case had gone to trial, the government would have presented eyewitness testimony (presumably from the victim of the robbery and perhaps customers), video footage from the Metro PCS store, "evidence seized from the home and van where [the plaintiff] was arrested," records from the plaintiff's Facebook account and the plaintiff's videotaped confession. Id. at 1. On October 18, 2019, the plaintiff entered guilty pleas to the robbery charge and the gun charge. Dkt. No. 79. Judge Stadtmueller accepted those guilty pleas. Dkt. No. 86.

The plaintiff's criminal case is not over. He has not been sentenced. He has not appealed. But when Judge Stadtmueller accepted his guilty plea, the defendant was convicted of the Hobbs Act robbery and the §924(c) charge. Because he pled guilty, however, none of the evidence seized from the house or van was used against him. Even if his arrest was unlawful, it would not change the fact that he has admitted that he was the person who robbed the Metro PCS store and that he used the gun in the robbery.[1] Given that, it would appear that the plaintiff's Fourth Amendment claims are not barred by Heck.

That does not mean that the plaintiff may proceed on the complaint as it stands. The plaintiff has sued four defendants—the Milwaukee Police Department, the United States Marshals, the Criminal Investigation Bureau and the Federal Bureau of Investigation. Dkt. No. 1 at 1. None of these are proper defendants. The United States Marshal Service and the Federal Bureau of Investigation are *federal* law enforcement agencies. Section 1983 prohibits a person acting "under color of" *state* law from violating the civil rights of another. Neither the U.S. Marshal nor the FBI are state actors. The court will

---

[1] On March 30, 2020, the plaintiff—representing himself—sent Magistrate Judge Joseph a letter, indicating that he wanted to withdraw his guilty pleas as to Counts One and Two—the arson count and the felon-in-possession count of the superseding indictment. Dkt. No. 94. (The defendant did not plead guilty to Count Two. The plea agreement required the defendant to plead guilty only to Count One, and the government agreed to dismiss Count Two at the time of sentencing. Dkt. No. 62 at ¶¶4, 9. In the letter, he referenced an evidentiary hearing that took place on August 2, 2019. That evidentiary hearing related to the search of the house on Marion and the plaintiff's arrest—which are relevant to Counts Three and Four, the Hobbs Act robbery and §924(c) charges. See Dkt. Nos. 45, 45-1. Judge Joseph recommended that Judge Stadtmueller deny the plaintiff's motion to withdraw his guilty plea, dkt. no. 101, and Judge Stadtmueller denied the motion on June 12, 2020, dkt. no. 105.

14

dismiss them as defendants. The Milwaukee Police Department acts under color of state law. But §1983 prohibits any "person" acting under color of state law from violating someone's civil rights. The MPD is not a person. It is possible for a plaintiff to sue a police department under §1983, but to do so, the plaintiff must allege "action pursuant to official municipal policy of some nature caused [the] constitutional [violation]." Monell v. Dep't of Soc. Serv's of City of New York, 436 U.S. 658, 691 (1978). A police department can't be held liable under §1983 solely because the officers who allegedly committed the constitutional violations were employed by that police department. Id. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. The plaintiff has not alleged any policy, custom or practice of the Milwaukee Police Department that resulted in the alleged violation of his constitutional rights. The court will dismiss the Milwaukee Police Department as a defendant. As to the "CIB/Criminal Investigation Bureau," the court is not sure to which agency the plaintiff refers. The Milwaukee County Sheriff's Department has a criminal investigations *division.* https://county.milwaukee.gov/EN/Sheriff/Divisions/Investigations. The Wisconsin Department of Justice has a crime information bureau. https:///www.doj.state.wi.us/dles/cib/crime-information-bureau. The court will dismiss the Criminal Investigation Bureau because likely it is an arm of a state or local law enforcement agency, and again, the plaintiff cannot sue a law

enforcement agency like the police department unless he can show that some policy, custom or practice of that agency resulted in the constitutional violations.

Finally, the court notes that one form of relief the plaintiff requests is suppression of evidence. That relief is not available in a civil lawsuit. If the plaintiff wants evidence in his criminal case suppressed, he must ask Judges Joseph and Stadtmueller for that relief. In fact, he already has done so. On July 19, 2019, the plaintiff filed two motions to suppress in the criminal case, arguing that there was no nexus between the events described in the search warrant affidavit and the Metro PCS robbery and arguing that the officers had no probable cause to arrest him. United States v. Burgess, Case No. 19-cr-42-JPS at Dkt. Nos. 33, 35. Magistrate Judge Joseph recommended that Judge Stadtmueller deny these motions, dkt. no. 52, the defendant objected, dkt. no. 53, and Judge Stadtmueller accepted Judge Joseph's recommendation and denied both motions, dkt. no. 68. Later in the case, representing himself, the plaintiff filed another motion to suppress. Dkt. No. 99. He argued exactly what he has alleged in this civil lawsuit—that the officers did not follow police procedures and that neither he nor Ms. Howard left the house that day. Id. at 1-2. He asserted that only one officer testified at the evidentiary hearing and that his lawyer did not press for more information. Id. at 3. He asserted that the officers entered and searched the house without a warrant and that his sister did not give consent. Id. at 3-4. He argued that the warrant and affidavit were signed after the search, and that the affidavit was signed after the

warrant. Id. at 4. He asked for an evidentiary hearing. Id. at 5. Judge Joseph recommended that Judge Stadtmueller deny this motion. Dkt. No. 101. Judge Stadtmueller denied the motion. Dkt. No. 105.

The court will allow the plaintiff to amend his complaint. The court is sending the plaintiff a blank complaint form. At the top of this form, he must write the word "AMENDED" next to the word "Complaint." He must put the case number for this case—19-cv-1901—on the line under the words "Case Number." He must list on the first page, under "Full name of defendant(s)," the name of each individual officer or agent he wishes to sue. If he does not know the name of an officer or agent, he may use the placeholder "John Doe" or "Jane Doe," along with a description—"John Doe Milwaukee Police officer, male with brown hair and glasses," for example. The plaintiff must include on the lines on pages 2 and 3 all the facts he alleges against each individual defendant—what each defendant did, when they did it, how they did it and, if he knows, why they did it. In the "Relief Wanted" section on page 4, the plaintiff may ask for money damages or injunctive relief, but he may not ask to suppress evidence in this civil lawsuit. If the plaintiff files this amended complaint, it will "supersede," or take the place of, the original complaint. Flanner v. Recording Indus. Ass'n of America, 354 F.3d 632, 638 n.1. So the amended complaint must be complete in itself—the plaintiff cannot tell the court to look back at the original complaint for the facts.

The court will require the plaintiff to file this amended complaint in time for the court to receive it by the end of the day on August 28, 2020. If the court

does not receive the amended complaint by the end of the day on August 28, 2020, it will dismiss the case for the plaintiff's failure to diligently prosecute it under Civil Local Rule 41(c).

V.      Conclusion

The court **GRANTS** the plaintiff's motion to proceed without prepaying the filing fee, dkt. no. 2, and **WAIVES** the initial partial filing fee.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **DENIES** the plaintiff's motion to temporarily close case. Dkt. No. 15.

The court **ORDERS** that the Milwaukee Police Department, the U.S. Marshal Service, the Criminal Investigation Bureau and the Federal Bureau of Investigation are **DISMISSED** as defendants.

18

Case 2:19-cv-01901-PP   Filed 07/23/20   Page 18 of 19   Document 16

The court **ORDERS** that if the plaintiff wishes to proceed with this lawsuit, he must file an amended complaint that complies with this order in time for the court to receive it by the end of the day on **August 28, 2020**. If the court does not receive the amended complaint by the end of the day on August 28, 2020, the court will dismiss the case for failure to diligently prosecute it under Civil L.R. 41.

Dated in Milwaukee, Wisconsin this 23rd day of July, 2020.

BY THE COURT:

**HON. PAMELA PEPPER
Chief United States District Judge**